IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| ALEJANDRO D. QUEVEDO-ANDRETTI, | ) | 8:15CV31 |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM** |
| v. | ) | **AND ORDER** |
| | ) | |
| NEBRASKA DEPARTMENT OF HEALTH AND HUMAN SERVICES, et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff Alejandro D. Quevado-Andretti ("Plaintiff") filed his Complaint (Filing No. 1) on January 22, 2015. Thereafter, Plaintiff filed four pleadings and motions seeking to supplement his Complaint. On April 10, 2015, the court ordered Plaintiff to file one amended complaint that identified each defendant by name and stated all of Plaintiff's claims against that defendant. (Filing No. 14.) The court also ordered Plaintiff not to file any other amended pleadings or supplements to his pleadings without first obtaining leave from the court.

Plaintiff filed his Amended Complaint (Filing No. 15) on May 4, 2015. The court now conducts an initial review of Plaintiff's Amended Complaint to determine whether summary dismissal is appropriate under 28 U.S.C. § 1915(e)(2). For the reasons that follow, the court will dismiss this case in its entirety.

## I. SUMMARY OF COMPLAINT

Plaintiff is currently an inpatient confined to the Lincoln Regional Center in Lincoln, Nebraska. His claims pertain to incidents that occurred when he was confined to inpatient sex-offender treatment at the Norfolk Regional Center ("NRC"). Liberally construed, he asserts First and Fourteenth Amendment claims brought pursuant to 42

U.S.C. § 1983 against 25 defendants.  (Filing No. 15 at CM/ECF p. 2.)  The court will summarize Plaintiff's allegations in the paragraphs that follow.

## A.    Jodi Howard and Holli Frye

Frye and Howard are specialists at the NRC.   Plaintiff alleged he asked Howard to open the laundry room door for him, and she responded in a rude and belligerent manner.  Plaintiff submitted a grievance to Frye concerning Howard's behavior, and Frye returned the grievance to Plaintiff with the following note, "Per N.R.C. reporting policy this grievance is discontinued and the Abuse/Neglect reporting process has been completed." (Filing No. 15 at CM/ECF pp. 2, 11.)

## B.    Terence Lane, Jennifer Bender, and Kevin Piske

Lane is an inpatient, and Bender and Piske are treatment providers at the NRC. Plaintiff alleged Lane used racially discriminatory language, and Bender and Piske failed to discipline him for it.  (Filing No. 15 at CM/ECF pp. 2, 21-22.)

## C.    Linda Hansen, Pat Bethune, Rose Prather, Pam Anderson, Ron Hampton, and Tim Schaefer

Hansen, Bethune, Prather, Anderson, Hampton, and Schaefer are all employed specialists or providers at the NRC.  At various times, they instructed Plaintiff to speak only in English while at the NRC.

Specifically, Plaintiff alleged that on November 24, 2010, Bethune informed Plaintiff he was only allowed to speak English.  In response to Plaintiff's complaints about being required to speak in English, Hansen instructed Plaintiff to explore options of embracing his heritage in ways other than speaking in Spanish. (Filing No. 15 at CM/ECF pp. 2, 4-5.)

On October 12, 2012, Anderson instructed Plaintiff to speak in English when she witnessed him speaking in Spanish to a fellow inpatient.  (Filing No. 15 at CM/ECF p. 10.)

On November 24, 2010, Prather told Plaintiff he was only allowed to speak in English within the NRC.  On December 23, 2014, upon hearing Plaintiff speaking in Spanish to a fellow inpatient, she informed Plaintiff that it was inappropriate and secretive for them to speak in Spanish. (Filing No.  15 at CM/ECF pp. 2, 5, 12.)

On November 24, 2010, Hampton witnessed Plaintiff speaking in Spanish to a fellow inpatient.  Hampton informed Plaintiff that he did not want anyone "speaking Mexican."  (Filing No. 15  at CM/ECF pp. 2, 7.)

On March 18, 2015, Schaefer informed Plaintiff he was violating the rules by speaking in Spanish and that it was within staff's discretion to require him to speak in English.  (Filing No. 15 at CM/ECF pp. 2, 16-17.)

**D.    Kayla Hrabanek and Jerry Fielder**

Hrabanek is a compliance specialist at the NRC and Fielder is an inpatient. Plaintiff alleged that on January 16, 2015, Fielder said the word, "nigger."  Hrabanek waited 10 days to ask for witness statements following the incident.  (Filing No. 15 at CM/ECF pp. 2, 4.)

**E.    Steven Freeman, Harvey Collins, and Russell Frast**

Freeman, Collins, and Frast are inpatients at the NRC.  Plaintiff alleged they used racially discriminatory language. (Filing No. 15 at CM/ECF pp. 2, 16, 27-28.)

**F.     Fred Kleeb and Whitney Rawhouser**

Kleeb is a compliance specialist and Rawhouser is a security specialist at the NRC.  Plaintiff alleged that on December 23, 2011, Rawhouser said "shut up faggot" to Plaintiff in Spanish.  Kleeb admitted to knowing about the incident, but did not take action in response to Plaintiff's grievances.  (Filing No. 15 at CM/ECF pp. 2, 9-10.)

**G.     Donna Crist**

Crist is a registered nurse at the NRC.  Plaintiff alleged he gave her a witness statement concerning racist comments and she failed to take any action in response. (Filing No. 15 at CM/ECF pp. 2, 24.)

For relief in this action, Plaintiff seeks varying amounts of monetary damages from each of the named defendants.

## II.  LEGAL STANDARDS ON INITIAL REVIEW

The court is required to review in forma pauperis complaints to determine whether summary dismissal is appropriate.  *See* 28 U.S.C. § 1915(e).  The court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B).

Pro se plaintiffs must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

4

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). However, "[a] pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted).

Liberally construed, Plaintiff here alleges federal constitutional claims. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute and also must show that the alleged deprivation was caused by conduct of a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993).

## III. DISCUSSION OF CLAIMS

### A.    Official-Capacity Claims Against State-Official Defendants

Plaintiff seeks monetary relief from state-official defendants in their official capacities for alleged past violations of federal law. He is not entitled to such relief because the Eleventh Amendment to the United States Constitution provides states, state agencies, and state officials acting in their official capacities with immunity from suits brought by citizens of other states and from suits brought by a state's own citizens. *See Hadley v. North Arkansas Cmty. Technical Coll.*, 76 F.3d 1437, 1438 (8th Cir. 1996), *cert. denied*, 519 U.S. 1148 (1997); *Hans v. Louisiana*, 134 U.S. 1, 15 (1890). Any award of retroactive monetary relief payable by the state, including for back pay or damages, is proscribed by the Eleventh Amendment absent a waiver of immunity by the state or an override of immunity by Congress. *See*, *e.g.*, *id.*; *Nevels v. Hanlon*, 656 F.2d 372, 377-78 (8th Cir. 1981). An exception to this immunity was recognized by the Supreme Court in *Ex Parte Young*, 209 U.S. 123 (1908), which permits prospective

injunctive relief against state officials for ongoing federal law violations.  This exception does not apply to cases involving requests for purely retroactive relief.  *Green v. Mansour*, 474 U.S. 64 (1985).

There is nothing in the record before the court showing that the State of Nebraska waived, or that Congress overrode, sovereign immunity in this matter.  Therefore, Plaintiff's claims for monetary relief against the NDHHS and his official capacity-claims against the state-official defendants are barred by the Eleventh Amendment.

## B.   Bauer, Simmons, O'Neill, Stephenson, Bright, and Mitchell

Plaintiff did not allege that Bauer, Simmons, O'Neill, Stephenson, Bright, and Mitchell were personally involved in the events described in the Amended Complaint. (Filing No. 15.)  A complaint that only lists a defendant's name in the caption without alleging that the defendant was personally involved in the alleged misconduct fails to state a claim against that defendant.  *See Krych v. Hvass*, 83 F. App'x 854, 855 (8th Cir. 2003) (citing *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974) (holding that court properly dismissed a pro se complaint where the complaint did not allege that defendant committed a specific act and the complaint was silent as to defendant except for his name appearing in caption)).

## C.   Individual-Capacity Claims Against Frye, Hrabanek, Bender, Piske, Crist, and Kleeb

Plaintiff's claims against these defendants are premised on their failure to take some action in response to his grievances and complaints concerning racism and also their failure to discipline patients and staff for using offensive language.  Plaintiff has not pled facts showing that these defendants violated any statutory or constitutional right for two reasons.

First, Plaintiff's allegations do not support a claim that state officials denied him a reasonably safe environment.  The state, and its officials, have a duty imposed by the

Substantive Due Process Clause of the Fourteenth Amendment to provide a "reasonably safe environment" for individuals involuntarily confined in a state mental health facility. *Elizabeth M. v. Montenez*, 458 F.3d 779, 786 (8th Cir. 2006) (quoting *Beck v. Wilson*, 377 F.3d 884, 890 (8th Cir. 2004). "To recover under § 1983 for a breach of that constitutional duty, a plaintiff must prove that a state official either intentionally violated the duty (such as criminal assault by a staff member) or was deliberately indifferent to a known excessive risk to patient safety (such as assault by another patient)." *Id.*

While Plaintiff's alleged exposure to racial slurs and offensive language is unfortunate, it does not state a claim of constitutional dimension. There are no facts alleged to suggest officials were deliberately indifferent to a known risk to Plaintiff's safety.

Second, Plaintiff's allegations that any of these defendants failed to respond to his grievances and complaints do not state a violation of Plaintiff's constitutional rights. *See Merryfield v. Jordan*, 431 Fed. App'x 743, 749 (10th Cir. 2011) (holding civilly-committed sex offender lacked any federal constitutional right to an adequate grievance procedure); *see also Lomholt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002) (holding that allegations regarding actions of prison officials in handling prisoner's grievances, and regulating his access to his attorney, were insufficient to state a constitutional claim); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) (holding that inmates have no "liberty interest" in the processing of their grievances, such as would support § 1983 claim for prison official's failure to pick up his completed grievance forms). For these reasons, Plaintiff's claims against Frye, Hrabanek, Bender, Piske, Crist, and Kleeb will be dismissed.

**D.   Individual-Capacity Claims Against Rawhouser, Howard, and Schaefer**

Plaintiff alleged these NRC employees used offensive and demeaning language toward him. These allegations do not state a claim of constitutional dimension. *See Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986) (per curiam); *see also Franks v.*

7

*Fridley*, No. 13-0561-WS-N, 2014 WL 3540574, at *5 (S.D. Al. July 17, 2014) ("Inappropriate, derogatory, demeaning, profane, threatening or abusive comments made by a correctional official to an inmate, no matter how repugnant or unprofessional, do not rise to the level of a constitutional violation.") (collecting cases); *McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir. 1993) (inmate's claims of general harassment and of verbal harassment were not actionable under § 1983); *O'Donnell v. Thomas*, 826 F.2d 788, 790 (8th Cir. 1987) (verbal threats and abuse by jail officials did not rise to the level of a constitutional violation). Therefore, Plaintiff's claims against Rawhouser, Howard, and Schaefer will be dismissed.

E.   **Individual-Capacity Claims Against Hansen, Bethune, Prather, Anderson, Hampton, and Schaefer**

Liberally construed, Plaintiff contends these defendants acted in some way to deprive him of an alleged First Amendment right to speak to other inpatients in Spanish. He does not allege that his ability to communicate was impaired by the requirement of speaking English, and his articulate pleadings indicate he is fluent in English. Instead, Plaintiff apparently believes he had a First Amendment right to communicate in Spanish at any time during his civil commitment at the NRC. Plaintiff seeks only monetary relief from these individuals for alleged past violations of federal law.

In assessing Plaintiff's First Amendment claims, the court considers them in light of appropriate therapeutic interests as well as the relevant safety and security concerns of the NRC. *See Karsjens v. Jesson*, No. 11-3659 (DWF/JJK), 6 F.Supp.3d 916 (D. Minn. Feb. 20, 2014) (collecting cases and discussing the standard of review applicable to First Amendment restrictions on civilly committed individuals).

Plaintiff cannot, as he suggests, have an *unfettered* right to speak Spanish to other inpatients confined to the NRC. In this case, the therapeutic interests and relevant safety and security concerns of the NRC are patently obvious. Plaintiff was confined to the NRC for sex offender treatment. The defendants have an interest in insisting inpatients speak in a language they can understand. Allowing inpatients to speak in a language the

NRC defendants cannot understand could create potential safety risks of which the defendants would be unaware, and could be counter productive to the inpatients' treatment.  Morever, it is apparent from Plaintiff's allegations that there is no blanket restriction prohibiting him from speaking in Spanish; rather, staff in their discretion, may require him and other inpatients to speak in English.

Separately, even if these defendants' insistence that Plaintiff speak in English was improper, they would nevertheless be entitled to dismissal of this action on the basis of qualified immunity.  At the pleading stage, an individual defendant official is entitled to qualified immunity "*unless* [the] plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011) (emphasis added) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  The purpose of qualified immunity is to avoid excessive disruption of governmental functions and to dispose of frivolous claims at the early stages of litigation.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The question of whether a defendant enjoys qualified immunity is a question of law for the court to resolve.  *See Siegert v. Gilley*, 500 U.S. 226, 232 (1991). Because qualified immunity is an immunity from suit, not just a defense to liability, *Saucier*, 522 U.S. at 200-01, the issue should be resolved at the earliest possible stage in litigation, *Siegert,* 500 U.S. at 232.

The right at issue in this case cannot be said to have been clearly established.  To show a right at issue was clearly established, a plaintiff must "point either to 'cases of controlling authority in their jurisdiction at the time of the incident' or to 'a consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful.'" *al-Kidd*, 131 S. Ct. at 2086 (quoting *Wilson v. Layne*, 526 U.S. 603, 617 (1999)).

Here, there is no Supreme Court or Eighth Circuit authority on Plaintiff's First Amendment claim.  Further, no court in this circuit or any other circuit had held that an inpatient confined to a state facility for sex offender treatment has an unfettered right to

speak in a foreign language to other inpatients. Therefore, even if Plaintiff were able to state a claim for a violation of a constitutional right, the defendants here would be entitled to qualified immunity.

Because the court has raised the issue of qualified immunity, the court will provide Plaintiff with an opportunity to respond to the issue.

## F.    Claims Against Lane, Freeman, Collins, and Frast

Lane, Freeman, Collins, and Frast were Plaintiff's fellow inpatients.  These individuals are private parties and, therefore, not subject to suit under 42 U.S.C. § 1983. *See Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 936 (1982) (reiterating that, for a defendant to be subject to suit under 42 U.S.C. § 1983, that defendant's actions must be fairly attributable to the state).  Moreover, Plaintiff's allegations with respect to these individuals fail to state any discernible claim for relief under Nebraska state law.

## IV.  STATE LAW CLAIMS

It is unclear to what extent Plaintiff intended to raise claims under state law. Regardless, the court declines to exercise supplemental jurisdiction over any remaining state law claims because it will dismiss all claims over which it has original jurisdiction. *See* 28 U.S.C. § 1367(c)(3).

IT IS THEREFORE ORDERED that:

1.    Plaintiff has 30 days in which to show cause why the First Amendment individual-capacity claims against Hansen, Bethune, Prather, Anderson, Hampton, and Schaefer should not be dismissed on the basis of qualified immunity.

2.    All other claims against all other defendants are dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B); except that Plaintiff's claims against Bauer,

Simmons, O'Neill, Stephenson, Bright, and Mitchell in their individual capacities are dismissed without prejudice, as are any state law claims Plaintiff may have intended to raise.

3.      Plaintiff's request for an order requiring some of the defendants to stay 150 feet away from him is denied as moot because Plaintiff is no longer incarcerated at the NRC.

4.      The clerk of the court is directed to term the motion event appearing at Filing Number 15 and update the docket text to reflect the document is Plaintiff's Amended Complaint.

DATED this 19th day of October, 2015.

BY THE COURT:


s/ Joseph F. Bataillon
Senior United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.